JOSEPH McCRUM, *et al.*, v. AMANDA CORBY, *Executrix, &c.*

1. NEW TRIAL; *Order Granting, Sustained.* Where the district court has set aside the verdict of a jury and granted a new trial on the ground that the verdict is against the evidence, and there appears to have been conflicting testimony upon all the essential facts, this court will not reverse the ruling of the district court, and order judgment on the verdict.

2. ——— *Effect of Order.* Where in addition to the general verdict answers are returned by the jury to particular questions, a motion to set aside the verdict and grant a new trial, if sustained, sweeps away both verdict and answers, and leaves the case as though no trial had been had.

*Error from Doniphan District Court.*

ACTION by *Amanda Corby*, as executrix, etc., plaintiff, against *McCrum* and three others, defendants. This action was once before in this court, and is reported in 11 Kas. 464, where a full statement of the facts will be found. A new trial of the case was had in the district court, at the March Term 1874. On the trial, findings of fact were submitted to the jury, and a general verdict for the defendants returned.

A motion was made by the plaintiffs to set aside *the verdict*, and was sustained, and a new trial ordered. From this order of the district court the defendants appeal.

The action was brought to foreclose notes and mortgage executed by *Willis J. Vancuren* and *Henrietta Vancuren* to *H. W. Boone*. They were made payable to order, and were *not indorsed*. The petition alleged, "That on the 26th of November 1865, said *Boone* sold, transferred and delivered said notes," etc. *Vancuren* and wife answered, admitting the execution of the notes and mortgage, but denied all other allegations of the petition. They further answered, that in April 1869, at a term of the district court for Doniphan county, *Willis J. Vancuren* confessed a judgment on said notes and mortgage in favor of *H. W. Boone;* that at the time of the confession of said judgment, said Vancuren had no notice of any transfer of said notes to said John Corby, plaintiff's testator; that afterward, said *McCrum* became the assignee of said judgment, and that before the commencement of this action, he paid large sums of money on said judgment, and without any knowledge of any claim of *Corby*, and averring that at the time of such payment said *Corby* was not the owner and holder of said notes. *Boone* answered by a general denial. *McCrum* answered by general denial — that the notes sued upon were, in February 1869, deposited with John Corby, who was a banker at Saint Joseph, Missouri, for safe-keeping; and setting up the judgment recovered by *Boone* on the notes, and the transfer of the judgment to him, and praying a foreclosure of the mortgage as against Henrietta Vancuren. Replies to these several answers by denial were filed. [Before the commencement of this suit, an action had been commenced by Vancuren and wife against McCrum and others, by injunction, to restrain the collection of his judgment, which action was consolidated with this. At the March term 1874, the order consolidating said action with this was set aside, and that action dismissed.]

On the trial, one Culligan, for plaintiff, testified that in 1866, these notes were deposited with John Corby as collat-

eral security for money loaned by Corby to Boone, and for advances of money that Corby should make to Boone from time to time; that about a year after, Boone deposited with Corby notes of one Robbins, for a like purpose; that Boone has not yet paid all the indebtedness for which these notes were pledged; that on November 28th 1868, Boone executed for his indebtedness to Corby, a note of $2,437.56, which is now due, except the sum of $256 paid by Robbins on one of his notes in Corby's hands; and that Boone also executed a mortgage on property in Saint Joseph, to secure this note; that the property in Saint Joseph was worth about $2,500; that the property in Saint Joseph was incumbered by deeds of trust to Boylan, to O'Keefe and Devors; that in 1869, the property in Saint Joseph was advertised for sale under the Boylan deed of trust; that Corby purchased said Boylan, Devors and O'Keefe notes, stopped the sale, and immediately sold it under his deed of trust, subject to the other deeds of trust, and Corby became the purchaser. The testimony of the defendants showed the judgment recovered on these notes. The testimony of McCrum, the purchase of the judgment, without notice of any claim of Corby; that after such transfer, Vancuren paid on said judgment $273.47. Willis J. Vancuren testified that he had no knowledge or notice, at the time the judgment was confessed, that the notes were owned or controlled or in the possession of Corby. *Boone* testified that these notes were deposited with Corby as security for the delivery to Corby of Saint Joseph city bonds, upon which advances of money were being made by Corby to him; that the agreement was that the notes were to be returned to him when the bonds should be delivered; that the bonds were delivered. Boone also testified, that when the note of $2,437.56 was executed, and a mortgage to secure it, it was the understanding and agreement between him and Corby, that Corby had no lien on the Vancuren note or the Robbins notes. Boone testifies that a settlement was had with Culligan, Corby's clerk, in February 1869, and the St. Joseph city bonds were then all delivered; that the package

containing the notes was handed him by Culligan, and they were returned, to be kept at the bank for him. Two witnesses testify to the same fact. The jury, in their findings of fact, found that Vancuren, at the time of the confession of judgment, had no notice of any claim of *Corby* to the notes; that *McCrum*, at the time he purchased the judgment, had no notice of any claim of *Corby* to the notes; that at the time of the execution of the $2,437.56 note and the mortgage to secure it, the Vancuren notes were released. They found that the $2,437.56 note was executed in Missouri, and upon usurious interest.

*Albert Perry*, and *B. O'Driscoll*, for plaintiffs in error:

The court set aside the verdict and granted a new trial on the ground that it believed Culligan rather than Boone. It had no legal authority to grant a new trial in the case, and the order is reviewable: 2 Ashmead, 31; 1 Dev. 107; 7 Mo. 601; 5 Conn. 187; 18 Conn. 484; 4 Gilmore, 11; 10 Vermont, 520. A discretion of a court, is a sound legal discretion: 8 Wend. 114.

A court can set aside a verdict and grant a new trial because the verdict is against the evidence, or the weight of evidence. But when upon a question which is decisive against either party, there is evidence on one side to support a verdict, and none on the other side, and a verdict is returned for the party who has offered evidence, it is error to set aside the verdict: 3 Gra. & W. on New Trials, 1312, 1284; 6 Barb. 141; 18 Wend. 141; 8 Humph. 1, 612; 9 Dana, 128; 1 McMullen, 131; 4 Ga. 428; 9 Yerger, 270; 2 Gilm. 618; 4 Cowen, 426. The jury found, that at the time of the execution of the note of $2,437.56 and mortgage to secure it, (which note embraced all the indebtedness of Boone to Corby,) it was the intention to release the notes Corby had of Boone's in his hands. Boone swears that such was the agreement between him and Corby. Culligan does not deny it. Boone testifies that Culligan's ground for refusal to give up the notes in March 1869, was, that there was

more due on the Boylan note than Boone had represented; and Culligan in his testimony does not deny this. This one fact found against the plaintiff, is decisive of the case against her. And in other respects Boone is corroborated.

The opinion of the court was delivered by

BREWER, J.: The only error complained of in this case is the granting of a new trial. This, under our statute, is doubtless an order which is reviewable; but as was said in the case of *Field v. Kinnear*, 5 Kas. 238, "this court will require a much stronger and clearer showing of legal error, or abuse of judicial discretion, before it will interfere, when the new trial has been granted, than where it has been refused, for the very obvious reason, that where a new trial has been granted an opportunity is afforded for another full and fair trial upon the merits of the case; but where it has been refused it operates as a final adjudication between the parties." Here the new trial was granted because in the judgment of the district court the verdict was against the evidence. That there was a contradiction in the testimony is conceded. Indeed, it is stated in the record that the court sustained the motion for a new trial upon the ground that it "believed the testimony of Culligan rather than that of Boone." Now, it is peculiarly the province of the trial court to see that the jury have not erred in weighing the testimony. Not unfrequently jurors, little used to the sifting and weighing of evidence, are misled, and give undue importance to some of the testimony, or undue credence to some of the witnesses. It is essential to the due administration of justice that there be some tribunal to correct these errors, and none so competent or fitting as the court who with them has listened to all the evidence, seen all the witnesses, noticed all the indications in each witness of truthfulness or falsehood. In the very nature of things, an appellate court, which sees only so much of the case as can be reduced to writing, is wholly inadequate to such a duty. Hence, great reliance is placed upon the judgment of the trial court. When it approves the finding of

the jury, and decides that there was evidence sufficient to sustain it, very rarely is that decision disturbed. The records of this court abundantly show, that upon any question of fact, that is almost invariably the end of controversy. It is useless to cite cases. On the other hand, when the trial court fails to approve the findings of the jury, this court must for the same reasons accept that as the legal and proper conclusion. The number of witnesses does not always decide the weight of evidence; and though Boone's testimony may, as counsel state, have been supported by other witnesses, yet Culligan's solitary testimony may properly have outweighed all on the other side. The district court so thought, and we cannot say there was any error in so holding.

Again, counsel for plaintiff in error contend there was error in the ruling of the district court because the motion for a new trial was not broad enough. The jury returned a general verdict, and with it answers to some questions of fact which had been duly submitted to them. The motion was, "to set aside the verdict, and grant a new trial." Nothing was said in the motion about the answers returned by the jury. Counsel claim that as no motion was made to set them aside they still stand, and must control any subsequent verdict, and therefore a new trial is unnecessary and improper. We do not so understand the law. When the verdict was set aside and a new trial granted, everything appertaining to the verdict fell; and the case stands for trial as though no trial had ever been had. We see no fact established by undisputed testimony conclusive against the claim of the plaintiff.

The judgment will be affirmed.

All the Justices concurring.