## DENVER, S. P. & P. R. CO. v. WILSON ET UX.

1. MASTER AND SERVANT — INJURY TO FIREMAN — NEGLIGENCE OF RAILROAD COMPANY — EVIDENCE.— In an action against a railroad company for injuries to a fireman by the derailment of a locomotive, caused by an obstruction on the track, testimony of the engineer as to the necessity for track-walkers is inadmissible, the question not being one of science or skill.

2. SAME.— Evidence that for several days fires had prevailed for miles along the mountain side, causing stones and logs to roll down upon the track, which was immediately below; that the company had knowledge of these facts; and that there were no track-walkers before midnight,— is sufficient to submit to the jury on the question of negligence.

3. SAME — CONTRIBUTORY NEGLIGENCE OF SERVANT.— Evidence that the engineer was momentarily absent, and the fireman was in his place; that the fireman had applied the air-brake; that the engine was moving slowly, and was derailed at a curve by a pine knot caught in the pilot, and was overturned on the fireman, the rules of the company making the fireman subject to the directions of the engineer.— is sufficient to sustain a finding that the fireman was free from fault.

4. DEATH BY WRONGFUL ACT — SUIT — PARTIES — PARENTS OF UNMARRIED ADULT.— Under General Statutes of 1883, sections 1030–1032, giving a right of action for personal injuries causing death, and sections 2529 and 2530, rendering children liable for the support of indigent parents, the parents of an unmarried adult are entitled to recover their pecuniary loss resulting from his death from the negligence of another.

*Appeal from District Court of Arapahoe County.*

ACTION by Robert S. and Maggie B. Wilson against the Denver, South Park & Pacific Railroad Company for

damages for negligently causing the death of plaintiffs' son. Judgment for plaintiffs, and defendant appeals. The following are sections from the General Statutes of 1883:

"Sec. 1030. Whenever any person shall die from any injury resulting from or occasioned by the negligence, unskilfulness, or criminal intent of any officer, agent, servant, or employee, whilst running, conducting, or managing any locomotive, car, or train of cars, or of any driver of any coach or other public conveyance whilst in charge of the same as a driver, and when any passenger shall die from any injury resulting from or occasioned by any defect or insufficiency in any railroad or any part thereof, or in any locomotive or car, or in any stage-coach or public conveyance, the corporation, individual, or individuals in whose employ any such officer, agent, servant, employee, master, pilot, engineer, or driver shall be at the time such injury is committed, or who owns any such railroad, locomotive, car, stage-coach, or other public conveyance at the time any such injury is received, and resulting from or occasioned by defect or insufficiency above described, shall forfeit and pay for every person and passenger so injured the sum of not exceeding five thousand dollars, and not less than three thousand dollars, which may be sued for and recovered — *First*, by the husband or wife of deceased; or, *second*, if there be no husband or wife, or he or she fails to sue within one year after such death, then by the heir or heirs of the deceased; or, *third*, if such deceased be a minor or unmarried, then by the father or mother, who may join in the suit, and each shall have an equal interest in the judgment; or if either of them be dead, then by the survivor. In suits instituted under this section it shall be competent for the defendant for his defense to show that the defect or insufficiency named in this section was not a negligent defect or insufficiency.

"Sec. 1031. Whenever the death of a person shall be

caused by a wrongful act, neglect, or default of another, and the act, neglect, or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who or the corporation which would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the party injured.

"Sec. 1032.    All damages accruing under the last preceding section shall be sued for and recovered by the same parties and in the same manner as provided in the first section of this act; and in every such action the jury may give such damages as they may deem fair and just, not exceeding five thousand dollars, with reference to the necessary injury resulting from such death, to the surviving parties, who may be entitled to sue; and also having regard to the mitigating or aggravating circumstances attending any such wrongful act, neglect, or default."

"Sec. 2529.    Every poor person who shall be unable to earn a livelihood in consequence of any bodily infirmity, idiocy, lunacy, or other unavoidable cause, shall be supported by the father, grandfather, mother, grandmother, child or grandchild, brother or sister of such poor person, if they or either of them be of sufficient ability.    *    *    *

"Sec. 2530.    The children shall first be called on to support their parents, if they be children of sufficient ability, and if there be none of sufficient ability, the parents of such poor person shall be next called on, and if there be no parents or children, the brothers and sisters of such poor person shall be next called on, and if there be no brothers or sisters, the grandchildren of such poor person shall next be called upon, and then the grandparents.    *    *    *"

Code Civil Procedure, section 9, provides that "a father, or, in case of his death or desertion of his family, the mother, may maintain an action for the injury or death

of a child, and a guardian for the injury or death of his ward."

Messrs. TELLER & ORAHOOD, for appellant.

Messrs. BROWNE & PUTNAM, for appellees.

STALLCUP, C.   This action was brought by appellees, under our statute for damages, for the death of their son, occasioned, as is alleged, by the negligence of appellant.

From the evidence it appears that on the 18th day of May, 1880, Robert Mack Wilson, son of appellees, twenty-five years of age and unmarried, was in the employ of appellant in the capacity of fireman upon a passenger engine on the appellant's railroad; that he then was, and previous thereto had been, making his home with his parents, the said appellees, to whom he contributed portions of his earnings.   While so upon the engine attached to a passenger train coming from Buena Vista to Denver, through the mountains, near Deansbury, upon said railroad, the engine ran off the track and upset, killing the said Robert Mack Wilson almost instantly; that the accident was caused by a pine knot about ten inches long which had caught in the pilot some distance back, and was dragged onto a curve in the track, where it caught onto the guard-rail there, stuck fast, and raised the wheels of the engine, running them off the track, so that the engine turned over, and threw the said Wilson out and fell upon him.

The appellees allege in their complaint that this knot or stick of wood was upon the track through the negligence of the appellant, and that the accident was by no fault of the deceased.   In the answer, appellant denied the negligence charged, and alleged that said accident was occasioned by the want of skill and care of the said deceased, who was then and there attempting to run said engine without the consent and without the knowledge of the said appellant.

Verdict was returned, and judgment entered in favor of appellees for the sum of $3,500.

It is assigned and argued upon this appeal that the district court erred in admitting certain evidence offered by the appellees, in rejecting certain evidence offered by the appellant, in denying the motion of appellant for judgment of nonsuit, and in giving certain instructions for appellees, and refusing certain instructions requested by appellant.

Of the various assignments of error presenting the questions above mentioned, we find but one well taken. The cause seems to have been carefully tried, and all appellant's objections will be overruled, save the assignment we shall proceed to consider.

One Morton was called by appellees, who were plaintiffs below, as a witness. Among other things, he testified that he was in the employ of the appellant company at the time of the accident complained of as an engineer; that with his engine he went over the piece of road where the accident occurred the night before; that he met with obstructions near the same locality, caused by the fire that had for some days been burning in the vicinity; that he found one log, perhaps not quite as long as the table, rolled down on the track, stopped and removed it; that there were no track-walkers or station-men on the section, that he knew of; that, as far as his experience went, he knew what the custom was as to track-walkers there; that he never saw any track-walkers upon that portion of the road. The following questions were then put to this witness, and the appended answers given: "Is it necessary that they should have track-walkers upon that particular branch or division of the road in the night-time, when trains were expected to pass over the road in the night, especially passenger trains, in order to protect against accidents? (Objection interposed and overruled.) *Question.* What do you say? Is it necessary, in your judgment, to have somebody walk along the track, to

look out so as to protect against accidents? (Objection again made and overruled.) *Answer*. Yes, sir; it is. Q. And it was at that time? *A*. Yes, sir."

The testimony given in answer to the foregoing specific questions was clearly inadmissible, and should have been rejected.   Negligence on the part of the company was the very essence of the action.   It was the specific subject under investigation at the time these questions were put and answered.   By declaring under oath that track-walkers were necessary, the witness gave his judgment upon the question of negligence, which question was for the jury alone to determine.   The admission of these statements cannot be sustained upon the theory that a question of science or of skill was under consideration, upon which the superior knowledge and experience of the witness entitled him to express an opinion. The facts upon which the opinion was elicited were facts as well understood by the jurymen as any one else, and it was their peculiar province to determine the necessity for having track-walkers, as well as the ultimate question of negligence, from all the facts and circumstances of the case.   Upon subjects of general knowledge which are understood by men in general, and which the jury are presumed to be familiar with, witnesses must testify as to the facts alone, and the jury must form the opinion.   All facts relating to the rails upon and the curves in the railroad, and the kind of obstructions liable to roll down upon the road by reason of the fires burning in the vicinity, were pertinent facts.   Also all facts showing the means possessed by the engineer and fireman for discovering obstructions on the track, and upon and between the rails, and in the wheels, in time to stop the engine, were likewise pertinent facts.   In the light of all these facts the jury were competent, and it was their duty, to determine the question whether track-walking was necessary to avoid accidents at the time and place under consideration.   *Bills v. City of Ottumwa*, 35 Iowa,

111; *Railroad Co. v. Greely*, 23 N. H. 243; Lawson, Exp. Ev. 94. It is impossible to say that the admission of this testimony was error without prejudice; it may have been the very thing that induced the jury to find negligence on the part of defendant.

In view of another trial of the case, we will notice some of the other questions presented in the argument for appellant. It is urged that the court erred in instructing the jury that the appellees were entitled to recover for the pecuniary loss resulting to them in consequence of the said death, for the reason that there was no legal obligation upon the part of the deceased to support the appellees, and therefore there were no damages except simply nominal damages. This position is untenable. The statute fully warrants such instruction. In the case of *City of Chicago v. Keefe*, 114 Ill. 229, in commenting upon a similar statute, the court say that the jury may give in such cases such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death to the wife and next of kin of such deceased; that the question is, in its nature, incapable of exact determination, and the jury should therefore calculate the damages in reference to a reasonable expectation of benefit as of right or otherwise from the continuance of the life; that parents, and even brothers and sisters, might reasonably expect in many ways to derive pecuniary benefit from the continued life of the intestate, as of grace and favor, if not by right, at any age of life; and that the statutes of Illinois impose the duty of support, in the event of their becoming paupers, of the parents by the children, and of one brother or sister by another brother or sister, and cite Rev. St. Ill. 1874, ch. 107, § 2. Section 2530 of our General Statutes is substantially the same, touching the liability of children to support their parents, as the Illinois statute cited upon the same subject. See, also, *Railroad Co. v. Barron*, 5 Wall. 90, 105, 106.

The instructions requested by appellant and refused by the court were to the effect that the evidence was insufficient to warrant a verdict for the appellees, and particularly in that the deceased had no right to put himself in the place of the engineer and to undertake to control the engine except upon the engineer's consent and upon the engineer's opinion that he was competent to run the engine. When the accident happened the engineer was for the moment away from his post, the fireman was at the engineer's place, presumably by his order; he had the lever of the vacuum air-brake in his hand and had applied the brake; the engine was going slowly; it was raised from the track, ran off at the curve, upset, and fell upon and killed the fireman. The evidence in the case, in view of the rules of the company making the fireman subject to the directions of the engineer, was sufficient to sustain a finding that the fireman was clear of fault or negligence, and in the proper discharge of his duty. *Railway Co. v. Bayfield*, 37 Mich. 205. It is also urged that the evidence was insufficient to warrant a submission of the question of negligence on the part of the appellant to the jury. If this question depends on evidence conflicting, or inference to be deduced from a variety of circumstances in regard to which there is room for fair difference of opinion between intelligent and fair-minded men, it is a proper question to be submitted to the jury, and the jury's finding thereon should be sustained. *Behrens v. Railway Co.* 5 Colo. 402; *Solly v. Clayton, post,* p. 30. We think the evidence and circumstances of this case bring it clearly within this rule.

Upon the question of negligence upon the part of appellant it appears from the evidence that for several days before the accident fires had been prevailing upon the mountain-side immediately above the track, for several miles along the railroad in the immediate vicinity of the accident; that stones, sticks and logs were rolling down upon the track by reason of the said fires; that this con-

dition of affairs was known to the appellant.    Upon this
branch of the case witness Deane testified that at that
time he made his headquarters at Deansbury Station, but
was on the track twelve hours out of the twenty-four,
above and below Deansbury Station; that he was above
that point the afternoon preceding the night of the ac-
cident; that he went there with an assistant to plant
trees around the place about a week prior to this acci-
dent; that it was an exceedingly dry time, and that he
found fires burning in the canyon above and below his
place; that he found it necessary to remain there to watch
the fires; that the witness took the time from noon till
midnight, and his assistant from midnight to noon, in
following trains either way by the place, and looking for
fires that might be thrown out, and putting them out as
soon as possible; and also at other times was up and
down the track in that locality; that he found fires burn-
ing, though not to so great an extent, when he first went
up there about a week prior to the accident; that they
increased rapidly; that the nearest fire he saw was about
three or four hundred yards from the place of the acci-
dent on the hillside, which had spread along the hillside
for a mile on either side, covering the ground where the
accident occurred; that he told Mr. Elsworth, the oper-
ator of the company, whose office was in witness' build-
ing at Dean Station, that the track was in a very danger-
ous condition, and suggested that he notify the train
dispatcher in Denver; that he (Elsworth) informed wit-
ness that he had notified him; that he knew of fires
covering more than four miles in length; that the station-
house was at the forks of the Platte, two and three-
quarters miles above Deansbury; that he saw a section
foreman pushing his rock car, with one man assisting
him, towards the forks of the Platte on the evening pre-
ceding the accident; that there were no other persons
excepting those two employed on that section at that
time; that there were no night-walkers or track-walkers

upon that section up till midnight; that witness had been walking on the track himself for about a week, and that during all the time up to midnight there were no track-walkers; that during all this time fires were burning.

The witness was then asked how frequently it happened upon this section during that time that obstructions came to the track from the effects of these fires, and answered that he removed hot rock and burning timber every afternoon or night in which he was watching fires, mostly in the immediate vicinity of his house, because there was where he had the most interest; that the afternoon preceding the death of Wilson he removed burning logs from the locality where he was killed; that at that immediate point of the road there was a precipitous mountain-side, with scattered timbers, cliffs and rocks, and little benches on which a little soil had accumulated, where trees had grown; the debris on the ground was on fire.

It appears that the appellant company had made some effort to avoid accidents in the way of notifying conductors and engineers of these fires, but whether the efforts made were sufficiently prompt and efficient to exonerate the company from the charge of negligence in the premises, in view of all the evidence shown by the record in the case, was a question for the jury under the rule stated.

For the error noticed we think the judgment should be reversed and the case remanded.

RISING and DE FRANCE, CC., concur.

PER CURIAM.   For the reasons stated in the foregoing opinion the judgment of the court below is reversed and the cause remanded.

*Reversed.*